## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MISTY A. DE LASHMIT,

       Plaintiff,

v.                         Case No: 2:17-cv-363-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff Misty A. De Lashmit seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 25)[2] and the applicable law. For the reasons discussed herein, the Court recommends the decision of the Commissioner be affirmed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of

## I.      Issues on Appeal[3]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the ALJ's giving little weight in whole or in part to the opinions of medical sources who treated or examined Plaintiff; (2) whether the ALJ erred in finding the jobs identified by the vocational expert ("VE") complied with the residual functional capacity ("RFC"); and (3) whether substantial evidence supports the ALJ's finding that the occupations identified by the VE constitute a significant number of jobs.

## II.      Summary of the ALJ's Decision

On June 18 and 19, 2013, Plaintiff filed applications for DIB and SSI, respectively, alleging her disability began May 14, 2013 due to epilepsy, back problems, neck problems, bi-polar disorder, depression, anxiety and psychosis.   Tr. 82-117, 225-26, 230-35.   Plaintiff's claims were denied initially on August 27, 2013, and upon reconsideration on November 6, 2013.   Tr. 82-117, 120-57.   On January 7, 2014, Plaintiff requested a hearing before an ALJ.   Tr. 184-85.   ALJ William G. Reamon held a hearing on December 9, 2015, and on February 8, 2016 the ALJ found Plaintiff was not disabled from May 14, 2013 through the date of the decision.   Tr. 29-42, 49-81.

the Court.

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2017[4] and had not engaged in substantial gainful activity since the alleged onset date of May 14, 2013.   Tr. 31.   Next, at step two, the ALJ found Plaintiff had severe impairments of seizure disorder, affective disorder and anxiety disorder.   Tr. 32.   At step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   *Id.*   The ALJ determined Plaintiff had the RFC to perform light work,[5] "except no climbing of ladders, ropes, or scaffolds, no exposure to dangerous moving machinery or unprotected heights, and no hi-low or commercial driving."   Tr. 34. The ALJ further limited Plaintiff to understanding, remembering and carrying out simple instructions, and said Plaintiff could have only occasional interaction with others and could tolerate only occasional work setting/process adjustments.   *Id.*   At step four, the ALJ determined Plaintiff was unable to perform any past relevant

---

[4] The Joint Memorandum notes Plaintiff's earning records indicate the date last insured actually was September 30, 2018.   Doc. 25 at 1 (citing Tr. 236).

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

work.   Tr. 40.   Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform.   Tr. 41-42.   Thus, the ALJ concluded Plaintiff was not disabled from May 14, 2013 to February 8, 2016, the date of the decision.   Tr. 42.   The Appeals Council denied Plaintiff's request for review on May 16, 2017, and Plaintiff subsequently filed a Complaint with this Court. Tr. 1-5; Doc. 1.

## III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[6]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808

---

[6] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.   *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017); 416.920a, 416.920c, 416.927 (effective March 27, 2017); SSR 16-3p.   The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a. Weighing medical source opinions

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or

mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180.

Here, Plaintiff argues the ALJ improperly weighed the opinions of several medical sources: Rajan Sareen, M.D., a physician from the Family Medical Clinic who treated Plaintiff once in November 2012; Paula Bowman, Psy.D., a state agency psychological consultant who examined Plaintiff in August 2013; Luis Rives, M.D., a psychiatrist who began treating Plaintiff in April 2015; Carol Dove, an advanced registered nurse practitioner ("ARNP") from the David Lawrence Center who treated Plaintiff on several occasions; and Mariana Perez, a case manager from the David Lawrence Center who saw Plaintiff once.   Doc. 25 at 16; *see* Tr. 558-59, 640-42, 649-51, 685-89, 734-41, 743-58.   Because the ALJ thoroughly explained his reasons for assigning the weight he did to each medical provider in light of the objective medical record, however, the Court recommends substantial evidence supports the ALJ's weighing of the identified medical opinions.

i.   *Dr. Rajan Sareen*

Throughout the record, Dr. Sareen is repeatedly referred to as Plaintiff's primary care provider or the person with whom Plaintiff should "follow up" after examinations by other physicians, but in fact the record reflects Dr. Sareen saw Plaintiff only once for a wellness exam on November 2, 2012.   *See* Tr. 558-59; *but see* Tr. 553-55, 557,[7] 622, 624, 626, 632, 659, 662, 667, 670, 676, 761.   At the request of the Social Security Administration ("SSA"), Dr. Sareen completed treating source

---

[7] This record indicates Plaintiff called Dr. Sareen's office on November 9, 2012 regarding constipation due to new medications.   Aside from this record and the treatment record from the wellness exam on November 2, 2012, there are no other documents in the record demonstrating phone calls or visits with Dr. Sareen. *See generally* Tr. 1-803.

mental status reports on June 28, 2013 and July 8, 2013.   Tr. 640-42, 649-51.   The

ALJ gave little weight to the medical opinions in Dr. Sareen's treating source mental

status reports, reasoning:

> [Dr. Sareen] is not a mental health specialist and therefore is not well
> qualified to assess the claimant's mental functioning.   Moreover, the
> medical evidence of record reveals that he only treated the claimant once
> on November 2, 2012.   Thus, Dr. Sareen did not have a well-established
> treating relationship or longitudinal understanding of the claimant's
> conditions and his assessment relates to a period prior to the alleged
> onset date of disability.   Moreover, his November 2 treatment record
> does not note any kind of psychiatric evaluation or observations.
> Finally, whether an individual is disabled goes to an issue reserved to
> the Commissioner and Dr. Sareen did not provide an appropriate
> "function by function" analysis.

Tr. 37 (citations omitted).

Plaintiff argues Dr. Sareen's opinions were not contradicted by any other

examining or treating medical sources, and "the ALJ assumed the role of a doctor in

substituting his medical judgment for that of the doctors who treated or examined

Plaintiff."   Doc. 25 at 19.   Plaintiff asserts that Dr. Sareen's opinions of Plaintiff's

mental limitations based on the visit in November 2012, when taken together with

Dr. Bowman's examination in August 2013 and Dr. Rives' treatment from April to

November 2015, demonstrate Plaintiff's mental limitations over a lengthy period of

time.   Id.   Plaintiff thus contends the ALJ's rejection of the opinions of all of the

medical sources who treated or examined Plaintiff in favor of the opinions of non-

examining state mental health consultants is unsupported by substantial evidence

and prejudicial to Plaintiff.   Id. at 20-22.   The Commissioner argues the ALJ

considered Dr. Sareen's opinions and properly accorded them little weight because he

is not a mental health specialist and "therefore was not as well qualified to assess Plaintiff's mental functioning." *Id.* at 25. The Commissioner also asserts Dr. Sareen's one-time treatment of Plaintiff is insufficient to consider him a treating doctor with a "well-established treating relationship and longitudinal understanding of Plaintiff's conditions," and his assessment was based on a period prior to the alleged onset date of disability. *Id.* at 25-26. The Commissioner points out that Dr. Sareen's single treatment record did not note a psychiatric evaluation or observation, which was a sufficient reason for the ALJ to give his opinions little weight. *Id.* at 26. The Commissioner also argues that the determination of whether an individual is unable to work for SSA purposes is an issue reserved to the Commissioner. *Id.* The Court recommends the ALJ properly afforded Dr. Sareen's opinions little weight.

In the June 2013 report, Dr. Sareen stated Plaintiff's mood was depressed; her thought process was unremarkable; her thought content included unknown delusions and several attempts at suicide; her concentration was fair to poor; her memory was fair; and her behavioral observations were unremarkable. Tr. 640-41. Dr. Sareen listed Plaintiff's diagnoses as anxiety, depression, mania and suicidal thoughts. Tr. 641. Dr. Sareen answered "yes" to a question asking if Plaintiff was competent to independently manage her own funds, referenced a history of schizophrenia, answered "Maybe part-time" to a question about what Plaintiff still could do despite her mental impairments, and answered "No, lack of concentration" to a question about whether Plaintiff was capable of sustaining work activity for eight hours a day, five days a week. Tr. 642. In the July 2013 report, Dr. Sareen stated Plaintiff's

mood was depressed; her thought process was distorted; her thought content included "unrealistic thinking/suicide;" her concentration was poor; her orientation was fair; her memory was "decreased;" and her behavioral observations were unremarkable. Tr. 649-50.   Dr. Sareen listed Plaintiff's diagnoses as anxiety and depression.   Tr. 650.   Dr. Sareen answered "not sure" on a question asking if Plaintiff was competent to manage her own funds, referenced "history" as the data used in formulating his diagnoses, answered "part time" to a question about what Plaintiff could still do despite her mental impairments, and answered "No" to a question about whether Plaintiff was capable of sustaining work activity for eight hours a day, five days a week.   Tr. 651.   Both reports indicate November 2, 2012 as the date Dr. Sareen had last seen Plaintiff, so the reason for the differences between the reports is unclear. Tr. 642, 651.

Although the ALJ was required to consider Dr. Sareen's records, he was not required to give deference to Dr. Sareen's opinions on Plaintiff's total disability, as that issue is reserved to the Commissioner.   *See* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-5p, 1996 WL 374183, at *2.   Further, the ALJ thoughtfully considered Dr. Sareen's diagnoses and opinions and gave specific reasons for discounting them.   As the ALJ correctly pointed out, Dr. Sareen is not a mental health specialist and is thus not well qualified to assess Plaintiff's mental functioning.   Tr. 37; *see* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).   Plaintiff's single treatment record from Dr. Sareen does not indicate any psychiatric evaluation or observations took place.   *See* Tr. 37, Tr. 558-59.   The treatment record's subjective

findings merely indicate Plaintiff screened positive for depression because she told Dr. Sareen she has a depressed mood all the time, a diminished pleasure in activities, feelings of worthlessness or guilt, diminished ability to concentrate, and multiple suicide attempts occurring every other month.   Tr. 558.   On the other hand, the treatment record further indicates that Plaintiff drives, dresses, uses the toilet, eats, walks, bathes and does laundry independently, and that Plaintiff's depression risk is unremarkable.   Tr. 558-59. Further, the ALJ's opinion identified objective medical records indicating Plaintiff's mental symptoms "are generally well controlled with psychotropic medication," her examinations consistently indicate "relatively mild symptoms," she is "generally alert and oriented to all spheres" with an appropriate mood, a congruent affect and "friendly and cooperative" behavior, and she consistently denies suicidal, homicidal or self-harming ideations, anxiety, depression and hallucinations.   Tr. 36 (citing Tr. 554, 664, 679, 705, 707, 715-16, 726, 746, 750, 753, 781, 801).   Thus, Dr. Sareen's opinions regarding Plaintiff's disability status are unsupported by the objective medical records and his own treatment notes.   *See Crawford*, 363 F.3d at 1159-60 (finding substantial evidence supported ALJ's decision to discount doctor's opinion that Plaintiff was disabled because the opinion was unsupported by medical evidence and the doctor's own treatment notes).

Moreover, as the ALJ noted, Dr. Sareen did not establish a treating relationship with Plaintiff because he saw Plaintiff only once.   Tr. 37.   The Eleventh Circuit has found that a doctor who examines a patient on only one occasion is neither considered a "treating physician" nor entitled to great weight.   *See Crawford*, 363

F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).   Also, Dr. Sareen based his assessment on a visit that occurred prior to the alleged onset date of disability.   *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").   Therefore, given the various reasons articulated by the ALJ and the Court's review of the objective medical evidence, the Court recommends substantial evidence supports the ALJ's decision to afford Dr. Sareen's opinions little weight.

> ii.   *Dr. Luis Rives*

Dr. Rives is a psychiatrist who began treating Plaintiff in April 2015.   Tr. 734-37.   The record indicates Dr. Rives examined Plaintiff on April 27, 2015, May 21, 2015, July 30, 2015, September 30, 2015 and November 19, 2015.   Tr. 734-35, 737. Dr. Rives submitted psychiatric review techniques ("PRT"), or listing forms, on November 19, 2015 for various SSA listings, which are co-signed by ARNP Carol Dove.   Tr. 734-39.   Dr. Rives also submitted a mental RFC assessment, also co-signed by Ms. Dove.   Tr. 740-41.   The ALJ accorded Dr. Rives' opinions little weight because they were not supported by "the relatively mild mental status examination findings reflected throughout the claimant's treatment records," and he "treated the claimant for a relatively brief period prior to completing [his] assessment."   Tr. 38 (citing Tr. 528, 534, 541, 554, 606, 611, 664, 670, 679, 687-88, 705, 707, 715-16, 726, 750, 754, 781, 802).

Plaintiff's arguments supporting her contentions about Dr. Sareen are the same as those supporting her contentions about Dr. Rives. *See* Doc. 25 at 19. Plaintiff also asserts "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Id.* at 20 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)). The Commissioner responds the ALJ properly accorded Dr. Rives' opinions little weight because they were "not supported by the relatively mild mental status examination findings reflected throughout Plaintiff's treatment records." *Id.* at 27. The Commissioner also notes Dr. Rives treated Plaintiff for a relatively brief period of time before completing his assessment, and the ALJ properly found Plaintiff had moderate limitations in social functioning. *Id.* The Court recommends the ALJ properly afforded Dr. Rives' opinion little weight.

Dr. Rives' PRTs are checklists on which Dr. Rives identified limitations and answered yes-or-no questions by checking boxes. *See* Tr. 734-41. On the forms, Dr. Rives opined Plaintiff met the listings of 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders) and 12.08 (Personality Disorders) based on checking boxes for various symptoms, including emotional withdrawal and isolation, thoughts of suicide, hallucinations, delusions or paranoid thinking, easy distractibility, recurrent severe panic attacks and persistent disturbances of mood or affect, as well as functional limitations such as marked difficulties in maintaining social functioning and repeated, extended

episodes of decompensation.   Tr. 734-39.   In a mental RFC assessment, Dr. Rives checked the boxes identifying various limitations that are "very extreme" for Plaintiff—characterized as "limited 65% of the time"—including the ability to maintain attention and concentration for extended periods, the ability to maintain regular attendance and be punctual, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to respond appropriately to changes in the work setting, and the ability to be aware of normal hazards and take appropriate precautions. Tr. 740-41.   Finally, Dr. Rives checked the box that Plaintiff has been disabled from substantial gainful work since May 14, 2013.   Tr. 741.

The Court finds the ALJ properly analyzed Dr. Rives' opinions.   First, form questionnaires, or so-called "checklist" opinions, such as those completed by Dr. Rives, generally are disfavored.   *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).   Second, the ALJ was not required to give deference to Dr. Rives' opinion on Plaintiff's disability

from substantial gainful work, as that issue is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-5p, 1996 WL 374183, at *2.

Third, the ALJ carefully considered Dr. Rives' opinions and gave specific reasons for discounting them. Tr. 38. The ALJ found Dr. Rives' opinions were not supported by the objective medical evidence and identified over 15 instances in the record reflecting mild examination findings regarding Plaintiff's mental status. *Id.* (citing Tr. 528, 534, 541, 554, 606, 611, 664, 670, 679, 687-88, 705, 707, 715-16, 726, 750, 754, 781, 802). The ALJ also noted the relatively short treatment history between Plaintiff and Dr. Rives before he completed his assessments, amounting to a total of five encounters in eight months. Tr. 38, 734-35, 737. Nonetheless, the ALJ integrated some of Dr. Rives' identified limitations into Plaintiff's RFC—namely, that Plaintiff be limited to carrying out simple instructions, have only occasional interaction with the general public, co-workers and supervisors, and only occasionally be required to handle work setting/process adjustments. Tr. 34; *see also* Tr. 740-41. Accordingly, the Court recommends substantial evidence supports the ALJ's decision to accord Dr. Rives' opinions little weight. *See Dobie v. Colvin*, No. 3:11-cv-1063-J-MCR, 2013 WL 828377, at *6-8 (M.D. Fla. Mar. 6, 2013) (finding substantial evidence supported ALJ's decision to afford minimal weight to treating psychiatrist and greater weight to examining psychologist because the ALJ properly discredited the psychiatrist's opinions).

### iii.  Dr. Paula Bowman

Dr. Bowman is a state agency examining psychological consultant who

examined Plaintiff on August 31, 2013, and the ALJ accorded her assessment mixed weight.   Tr. 37, 685-89.   The ALJ reasoned:

> [H]er opinion that the claimant has mild to moderate limitations in her capacity to concentrate, perform tasks, and make decisions is given great weight as it is consistent with her objective findings and observations during the clinical interview and mental status examination.   However, her opinion that the claimant has marked difficulty coping with stress is given little weight because this is inconsistent with her objective findings as well as the mental status examinations noted in the treatment records.   Moreover, such finding is inconsistent with Dr. Bowman's own chosen GAF[8] score of 57.

Tr. 37 (internal citations omitted) (citing Tr. 554, 664, 679, 685-89, 705, 707, 715-16, 726, 750, 753, 781, 802).   Plaintiff's arguments supporting her contentions about Dr. Sareen and Dr. Rives are the same as those supporting her contentions about Dr. Bowman.   *See* Doc. 25 at 19.   Plaintiff also asserts Dr. Bowman, as well as Plaintiff's treating physicians, benefited from their own observations of Plaintiffs, a review of her medical history and consideration of her subjective statements.   *Id.* at 21.   The Commissioner argues Plaintiff failed to show the ALJ erred in his consideration of Dr. Bowman's opinions, asserting the opinions were inconsistent with Dr. Bowman's objective findings, the mental status examinations in the treatment records, and the GAF score she herself assigned to Plaintiff.   *Id.* at 30.   The Court recommends the ALJ properly evaluated Dr. Bowman's opinions, and substantial evidence supports the ALJ's decision to assign them mixed weight.

---

8 Global assessment of function ("GAF") is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders ("DSM"), 33 (4th ed. 1994).

In her assessment of Plaintiff, Dr. Bowman indicated Plaintiff's demeanor and responsiveness to questions during the examination was cooperative, and "[h]er manner of relating, social skills, and overall presentation were adequate." Tr. 687. Dr. Bowman said Plaintiff was appropriately dressed, her hygiene and grooming were adequate, and her eye contact was appropriate. *Id.* She opined that Plaintiff's thought processes were "coherent and goal directed with no evidence of hallucinations, delusions, or disordered thinking in the examination," and she stated Plaintiff's mood was mildly anxious, her affect flat and her sensorium clear. *Id.* Dr. Bowman indicated Plaintiff's attention, concentration and memory skills were "mildly impaired," and her "intellectual functioning was estimated to be in the average range." Tr. 687-88. Dr. Bowman opined Plaintiff could understand simple directions and instructions and perform simple tasks with supervision. Tr. 688. She further opined Plaintiff has mild difficulty maintaining attention and concentration, moderate difficulty making appropriate decisions, moderate difficulty relating adequately with others, and marked difficulty appropriately coping with stress due to symptoms related to depression and anxiety. *Id.* Dr. Bowman diagnosed Plaintiff with bipolar II disorder, most recent episode depressed, severe, with psychotic features; panic disorder without agoraphobia; bereavement; epilepsy; muscle spasms; and spine damage. Tr. 689. Dr. Bowman assigned Plaintiff a GAF score of 57, which indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." *See* Tr. 37, 689.

The Court recommends the ALJ properly evaluated Dr. Bowman's opinion. In

explaining and thoroughly considering the assessment, the ALJ gave great weight to Dr. Bowman's opinions that were consistent with her objective findings and observations and integrated those findings into Plaintiff's RFC—namely, the ALJ included limitations to understanding, remembering and carrying out simple instructions, to only occasional work setting/process adjustments, and to only occasional interactions with the general public, co-workers and supervisors.   Tr. 34, 36-37.   The ALJ supported his decision to give little weight to Dr. Bowman's opinion that Plaintiff has marked difficulty coping with stress by citing to numerous records that are inconsistent with that conclusion, which demonstrates Dr. Bowman's opinions were not "uncontroverted" as Plaintiff suggests.   Doc. 25 at 19; Tr. 37 (citing Tr. 554, 664, 679, 685-89, 705, 707, 715-16, 726, 750, 753, 781, 802); see *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").   Additionally, Dr. Bowman's opinion indicates she received a report of contact dated July 19, 2013, the treatment notes from Plaintiff's wellness check with Dr. Sareen on November 2, 2012, and the treating source mental status report Dr. Sareen completed on July 8, 2013.   *See* Tr. 685; *see also* Tr. 311-12, 558-59, 649-51.   These documents do not sufficiently reflect Plaintiff's medical history to provide a greater benefit to Dr. Bowman than had the non-examining state mental health consultants.      Therefore, the Court recommends substantial evidence supports the ALJ's decision to discount portions of Dr. Bowman's opinions.   *See Hunt v. Soc. Sec. Admin., Comm'r*, 631 F. App'x 813, 816-17 (11th Cir. 2015) (finding substantial evidence supported ALJ's

decision to give more weight to opinions of non-examining psychologists than to the opinion of an examining psychologist because the ALJ's reasoning was explained fully and the medical record as a whole was consistent with the ALJ's decision).

### iv.   ARNP Carol Dove and Case Manager Perez

Ms. Dove and Ms. Perez each had visits with Plaintiff at the David Lawrence Center.   Ms. Dove examined Plaintiff on May 21, 2015, July 30, 2015 and September 30, 2015, and she co-signed Dr. Rives' PRTs and mental RFC assessment.   Tr. 734-41, 750-58.   Ms. Perez met with Plaintiff on March 11, 2015.   Tr. 743-49.   The ALJ considered the GAF score of 35 that Ms. Dove and Ms. Perez gave Plaintiff—indicating "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood"—but determined the score was "inconsistent with their objective mental status examination findings and the claimant's contemporaneous subjective reports."   Tr. 38, 747, 752, 756.   The ALJ also noted GAF scores are merely a "snapshot of the claimant's ability to function at the particular time of the assessment," and are not endorsed by the Commissioner for use in disability determinations.   Tr. 38.   Further, because nurse practitioners and case managers are not acceptable medical sources under the Social Security regulations, the ALJ treated the opinions of Ms. Dove and Ms. Perez as those of an "other source[s]" and accorded them little weight.   Id. (citing 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); SSR 06-03p, 2006 WL 2329939).

Plaintiff argues the ALJ improperly gave little weight to the GAF score

assigned by Ms. Dove and Ms. Perez.   Doc. 25 at 16.   Plaintiff does not, however, provide any specific reasons why the ALJ's decision to give the GAF score little weight was improper.   *See id.* at 16-22.   Plaintiff merely restates the ALJ's findings and that Ms. Dove and Ms. Perez assigned Plaintiff a GAF score of 35.   *Id.* at 19. Plaintiff then argues that Ms. Dove "qualified as a medical source (though not an acceptable medical source) under SSR 06-3p, which was in effect at the time of the ALJ's decision." *Id.* (internal quotation marks omitted).   The Commissioner responds that Plaintiff's mental status exams with Ms. Dove and Ms. Perez were "completely normal" and thus the ALJ properly found the GAF score of 35 inconsistent with their objective findings.   *Id.* at 28.   The Commissioner also asserts she has declined to endorse GAF scores for determining disability status, GAF scores were abandoned in the most recent edition of the DSM, and GAF scores are not entitled to any relevant weight unless based on an examiner's opinion regarding the examinee's ability to work.   *Id.*   The Commissioner further argues the ALJ properly considered the opinions of Ms. Dove and Ms. Perez as those of "other source[s]" because they are not acceptable medical sources under the Social Security regulations.   *Id.* at 29.   The Court recommends the ALJ properly weighed the GAF score and opinions of Ms. Dove and Ms. Perez.

During Ms. Perez's mental status exam of Plaintiff on March 11, 2015, she noted Plaintiff's affect was blunted/flat; her appearance was clean and neat, and she was appropriately dressed; her behavior was friendly and cooperative; her cognition was within normal limits; she was able to comprehend; and she was oriented on all

spheres.   Tr. 746.   Ms. Dove conducted mental health exams on May 21, 2015 and July 30, 2015, noting on both occasions that Plaintiff was alert, oriented, cooperative and friendly, with a neutral mood and congruent affect.   Tr. 750, 754.   Plaintiff denied hallucinations and suicidal or homicidal thoughts; there was no evidence of delusional thinking; her insight and judgment were intact; and her appetite and sleep were within normal limits.   Tr. 750, 754.   The ALJ may discount a medical opinion when contradicted by the service provider's own treatment notes, which the ALJ properly did here.   *See Crawford*, 363 F.3d at 1159-60.   Further, nurse practitioners and case managers are excluded from the list of acceptable medical sources as defined in the operative regulations and thus are not entitled to substantial weight.   20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 668 (11th Cir. 2015).   Therefore, the Court recommends the ALJ did not err in considering the opinions of Ms. Dove and Ms. Perez as those of "other source[s]" and discounting the GAF score they assigned Plaintiff.   *See Crawford*, 363 F.3d at 1160 (finding ALJ's decision to discount chiropractor's opinion supported by substantial evidence because he was not an acceptable medical source under the SSA regulations and his findings of disability were inconsistent with his own treatment notes and unsupported by the medical record).

> b. *Step 5 determination*

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given her RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the Commissioner can produce evidence of jobs available in significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove she is unable to perform the jobs identified by the Commissioner. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

Here, Plaintiff argues (1) the ALJ erred by finding the jobs the VE identified complied with Plaintiff's RFC; and (2) substantial evidence does not support that a significant number of jobs exist that Plaintiff can perform because the VE appeared to have relied on broader Occupational Employment Statistics ("OES") job categories rather than the specific Dictionary of Occupational Titles ("DOT") job titles in providing the ALJ with job numbers. Doc. 25 at 33-34, 36-39. The Court recommends substantial evidence supports the ALJ's determinations at step five.

> i. The identified jobs' compliance with Plaintiff's RFC

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). In making this determination, "the ALJ must articulate specific jobs that the claimant is able to

perform, and this finding must be supported by substantial evidence." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ is permitted to consider the DOT, which is published by the Department of Labor. SSR 00-4p, 2000 WL 1898704; *see* DOT, Occupational Definitions (4th ed., rev. 1991). The ALJ also is authorized to consider the testimony of a VE as a source of occupational evidence. SSR 00-4p, 2000 WL 1898704. "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (quoting *Jones*, 190 F.3d at 1229). The ALJ has an affirmative duty to "ask about any possible conflict between [the VE's testimony] and information provided in the DOT." SSR 00-4p, 2000 WL 1898704.

At the hearing, the VE testified that there would be a representative number of jobs accommodating the hypothetical person the ALJ presented with Plaintiff's ultimate RFC determination—including a limitation to understanding, remembering and carrying out simple instructions—and identified the jobs of mail clerk, garment sorter and remnant sorter. Tr. 76-77. The ALJ relied on the VE's testimony to find there are jobs that exist in significant numbers in the national economy Plaintiff can perform based on her age, education, work experience and RFC, namely the three jobs identified by the VE. Tr. 41-42. The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE answered in the affirmative. Tr. 77-78.

Plaintiff argues her limitation to understanding, remembering and carrying out simple instructions equates to a reasoning level of 1 as defined by the DOT.[9]   *See Doc. 25 at 33-34*.   Thus, because the job of mail clerk has a reasoning level of 3 and the jobs of garment sorter and remnant sorter have a reasoning level of 2, all three jobs exceed Plaintiff's RFC.   *Id.* at 34.   As the Commissioner correctly asserts, however, a limitation to perform only simple and routine tasks is not inconsistent with a reasoning level of up to 3 for unskilled work, and all three identified jobs are unskilled jobs with a specific vocational profile ("SVP") of 2.[10]   *See id.* at 35; *see also, e.g.*, *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016) (finding a job with a reasoning level of 3 was consistent with unskilled, "simple work" limitations because the position also had an SVP of 2); *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (collecting cases finding "the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks").   Moreover, the VE testified that his opinions were

---

[9] The DOT defines reasoning level 1 as "Apply commonsense understanding to carry out simple one- or two-step instructions.   Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C: Components of the Definition Trailer, § III, General Educational Development.   Reasoning level 2 is defined as "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.   Deal with problems involving a few concrete variables in or from standardized situations."   *Id.*   Reasoning level 3 is defined as "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.*

[10] The DOT defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   DOT, Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP).   An SVP of 2 encompasses "[a]nything beyond a short demonstration up to and including 1 month."   *Id.*

consistent with the DOT, and Plaintiff did not "raise the issue of any potential conflict between the VE's testimony and the DOT" during the hearing.   *See* Tr. 78-80; *Hobbs, 2015 WL 628763, at *5*.   Therefore, the Court recommends substantial evidence supports the ALJ's finding that Plaintiff could perform the jobs of mail clerk, garment sorter and remnant sorter because their reasoning and SVP levels comport with Plaintiff's RFC.   *See* Tr. 34, 41-42; *see also Chambers*, 662 F. App'x at 873; *Hobbs, 2015 WL 628763, at *5*.

ii.   Job numbers

Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of whether work exists in Plaintiff's immediate geographical area, whether specific job vacancies exist, or whether Plaintiff would be hired if she applied.   *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933-35 (11th Cir. 2015) (citing 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966(a)-(c)).   As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule. As the court recently noted:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Id.* at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)).

Here, Plaintiff argues substantial evidence does not support the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff could

perform because the ALJ relied on the VE's erroneous testimony regarding job numbers.  Doc. 25 at 36-39.   Plaintiff claims that SkillTRAN software numbers for each of the specific DOT jobs the VE identified vary dramatically from the numbers the VE provided, and that Plaintiff's review of U.S. Department of Labor ("USDOL") numbers for OES groups suggests the VE provided job numbers for the broader OES groups rather than the specific DOT jobs.[11]  *Id.*  (citing Tr. 379, 381, 383; Doc. 25-1 at 8, Doc. 25-2 at 7; Doc. 25-3 at 11).   Plaintiff asserts reliance on the OES groups is problematic because each of the relevant OES groups contain part-time jobs and DOT titles that exceed Plaintiff's RFC.   *Id.* at 38.   The Commissioner responds that Plaintiff is introducing new evidence of job numbers for the first time before this Court, and reviewing the ALJ's decision in light of new evidence is not appropriate in this case because Plaintiff has waived any argument to remand under sentence six of 42 U.S.C. § 405(g).   *Id.* at 40 (citing *Ingram*, 496 F.3d at 1261).   The Commissioner argues Plaintiff failed to challenge the VE's testimony about the number of jobs in the national economy at the hearing, and the VE identified his sources for his testimony, including the Florida Agency for Workforce Innovation and OccuBrowse software, about the number of jobs for each DOT title.   *Id.*   The Commissioner asserts Plaintiff "engages in rank speculation that the VE was testifying about the

---

[11]  Plaintiff states the USDOL jobs number for OES group 43-9051, which contains the mail clerk job and 13 other occupations, accounts for 99,140 jobs nationally; the USDOL jobs number for OES group 51-9199, which contains the garment sorter job and 1,525 other occupations, accounts for 206,600 jobs nationally; and the USDOL jobs number for OES group 51-9061, which contains the remnant sorter job accounts and 781 other occupations accounts for 471,750 jobs nationally.   Doc. 25 at 37 (citing Doc. 25-1 at 8; Doc. 25-2 at 7; Doc. 25-3 at 11).

number of jobs in each OES category, not individual job titles," but fails to demonstrate that her new evidence is current as of the time of the hearing and ALJ decision.   *Id.* at 41.   The Commissioner also contends the number of full-time jobs in the national economy based on Plaintiff's numbers—which amounts to a total of 4,464 full-time jobs between the three identified positions—still constitutes a significant number of jobs to satisfy step five.   *Id.* (citing *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005)).   The Court recommends substantial evidence supports the ALJ's determination that a significant number of jobs exist in the national economy that Plaintiff can perform.

The VE testified that were 99,000 mail clerk jobs, 217,000 garment sorter jobs and 489,000 remnant sorter jobs in the national economy.   Tr. 77.   When the ALJ asked if his opinions were consistent with the DOT, the VE answered in the affirmative.   Tr. 77-78.   Plaintiff's counsel cross-examined the VE as follows:

> ATTY:   Okay.   If – well, the, the job numbers that you've provided, what sources did you get them from?
>
> VE: Those jobs, Counsel, came from Florida Agency for Work Force Innovation.
>
> ATTY:   Okay.   So do you, do you get a publication or do you use a software for those numbers?
>
> VE:   The numbers that I got came from the material that awe [sic] are allowed to use and that material would be able to batch those numbers and the last update on that – hold on for one minute and I give you the last update on it.   May 2014.
>
> ATTY:   Okay.   And does that information break down the numbers by the specific individual *DOT* code, so, for example –
>
> VE:   That's correct.

ATTY:   Okay.   And could you repeat the name of the source?   You said something Work Force and Innovation.

VE:   Repeat that again.   I didn't understand it.

ALJ:   What was the name of the source that you, that you relied on for those numbers?

VE:   The OccuBrowse.

ATTY:   Okay. All right.   Thank you very much, Mr. Pearson.   I don't have any other questions.

Tr. 79-80.

Based on the VE's testimony, it is speculative at best that the VE relied on numbers from an OES group rather than specific DOT titles.   When Plaintiff's counsel asked the VE whether the VE's source broke down numbers by specific DOT title, the VE answered in the affirmative.   Tr. 80.   Also, this case is distinguishable from others where courts, including this Court, have found the ALJ erred by relying on VE testimony when the VE *admitted* to exclusively relying on OES numbers or job software to determine job numbers.   *See, e.g.*, *Griffin v. Comm'r of Soc. Sec.*, No. 2:17-cv-280-FtM-99CM, 2018 WL 3352929, at *10 (M.D. Fla. June 20, 2018); *Thompson v. Comm'r of Soc. Sec.*, No. 2:15-cv-53-FtM-CM, 2016 WL 1008444, at *5 (M.D. Fla. Mar. 15, 2016).   Here, the hearing exchange demonstrates the VE did not exclusively rely on OccuBrowse—the VE also mentioned relying on the Florida Agency for Work Force Innovation, and he testified his opinions were consistent with the DOT.   Tr. 79-80. The ALJ also found the VE to be "very well qualified to testify on these matters," and the VE's resume demonstrates extensive experience as a vocational consultant and

expert.   Tr. 42, 340-49.   Therefore, the ALJ was permitted to rely on the VE's expertise.   *See* *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony."); *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise." (citing 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), 416.960(b)(2), 416.966(e))).

Further, although the data presented by Plaintiff both to the Appeals Council and to this Court could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one.   *See* Tr. 379, 381, 383; Doc. 25-1; Doc. 25-2; Doc. 25-3; *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F. 3d 847, 850 (11th Cir. 2015); *see also* *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.   Therefore, the Court recommends substantial evidence supports the ALJ's reliance on the VE to conclude that a substantial number of jobs exist in the national economy that Plaintiff could perform.   *See* *Davis v. Berryhill*, No. 17-CV-293-N, 2018 WL 2208432, at *5-8 (S.D. Ala. May 14, 2018) (finding substantial evidence supported ALJ's determination that a significant number of jobs existed in national economy where Plaintiff alleged her SkillTRAN numbers demonstrated the VE used OES rather than DOT job numbers because lay interpretation of SkillTRAN data merely presented an alternative conclusion and the VE said her testimony was consistent with the DOT).

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **AFFIRMED.**

2.      The Clerk of Court be directed to enter judgment pursuant to sentence

four of 42 U.S.C. § 405(b) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 19th day of July, 2018.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record