UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MISTY A. DE LASHMIT,

    Plaintiff,

v.                            Case No: 2:17-cv-363-FtM-99CM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court on consideration of Magistrate Judge Carol Mirando's Report and Recommendation (Doc. #27), filed on July 19, 2018, recommending that the Decision of the Commissioner be affirmed. On August 2, 2018, plaintiff filed Objections (Doc. #28), and on August 16, 2018, the Commission filed a Response to Plaintiff's Objections (Doc. #29).

**I.**

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)(citing Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance, and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)(citing

Crawford, 363 F.3d at 1158-59). Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59 (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)). The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Moore, 405 F.3d at 1211 (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007)(citing Martin, 894 F.2d at 1529).

## II.

The Magistrate Judge found that the Administrative Law Judge (ALJ) correctly found that Dr. Sareen failed to establish a treating relationship with plaintiff; that the ALJ properly weighted Dr. Rives' opinions with little weight; that the ALJ properly evaluated Dr. Bowman's opinion; and that the ALJ properly weighed the Global Assessment of Function (GAF) score and opinions of Ms. Dove and Ms. Perez.

Plaintiff objects that "the ALJ assumed the role of a doctor in substituting his medical judgment" for the doctors who actually

treated or examined plaintiff. (Doc. #28, p. 2.) Plaintiff admits that the doctors had short treatment histories with plaintiff, but it is asserted that opinions were provided for three different periods of time, November 2012, August 2013, and November 2015.

The ALJ noted that Rajan Sareen, M.D. of the Family Medical Clinic, saw plaintiff only once in **November 2012**, with no record of a psychiatric evaluation at that time, and then submitted Treating Source Statements in June and July 2013. (Doc. #18-2, Tr. 37.) Dr. Sareen's opinion that plaintiff was incapable of sustaining work activity for 8 hours a day, 5 days a week due to her mental impairments was given little weight because he is not a mental health specialist and the treating relationship was not well-established. (Id.)

Plaintiff was referred to Dr. Paula Bowman, Psy.D. in **August 2013**. (Id.) Dr. Bowman diagnosed plaintiff with Bipolar II Disorder, and assigned a GAF score of 57, indicating moderate symptoms or difficulty in functioning. The ALJ gave Dr. Bowman's assessment that plaintiff has mild to moderate limitations greater weight because it was consistent with objective findings and observations during a clinic interview and mental status examination. The ALJ gave little weight to Dr. Bowman's opinion that plaintiff had marked difficulty coping with stress because it

was inconsistent with the objective findings and inconsistent with the GAF score. (Id., Tr. 37.)

The State Agency medical consultant, P.S. Krishnamurthy, M.D., reviewed plaintiff's file in November 2013. (Id., Tr. 36.)

A psychiatrist, Luis Rives, M.D. began treatment of plaintiff in late April 2015, and submitted a Treating Source Statement in **November 2015**. (Id., Tr. 37, 38.) The ALJ gave Dr. Rives' opinions little weight because they were not supported by the "relatively mild mental status examination findings reflected throughout" the records. (Id., Tr. 38.)

After an independent review, the Court finds that substantial evidence supports the ALJ's findings with regard to the appropriate weight to be given to each medical provider. It is also clear that the ALJ was aware of all the various treatment dates, and plaintiff fails to note that the opinions were not rendered by the same provider during the three different periods. The objection is overruled.

**III.**

The Magistrate Judge found substantial evidence supports the ALJ's determinations at step five. The Magistrate Judge found that the ALJ's finding that plaintiff could perform the jobs of mail clerk, garment sorter, and remnant sorter was supported by substantial evidence. The Magistrate Judge noted that a limitation to perform only simple and routine tasks is not

inconsistent with a reasoning level of up to 3 for unskilled work. The Magistrate Judge found that the exchange at the hearing demonstrated that the vocational expert did not exclusively rely on OccuBrowse, and that substantial evidence supports the ALJ's reliance on the vocational expert to conclude that a substantial number of jobs exist for plaintiff in the national economy.

Plaintiff argues that only jobs requiring a reasoning level of 1 are limited to simple instructions, and the job of mail clerk carries a reasoning level of 3, and the other two positions carry a reasoning level of 2. Plaintiff argues that only jobs requiring a reasoning level of 1 are limited to simple instructions, and plaintiff's residual functional capacity was for light work. (Doc. #18-2, Tr. 34.)

After hearing testimony of the vocational expert, the ALJ found that although plaintiff was not capable of performing any of her past relevant work, other work existed in the national economy that plaintiff could transition to, including sorting mail, garment sorting, and remnant sorting. (Doc. #18-2, Tr. 41-42.) At the hearing, the ALJ had the vocational expert assume as follows:

> an individual of the claimant's age and education and work experience who, because of the frequency of her seizures may be missing work at a rate of two to four days a month because of these major seizures and likewise from her description, she's having really multiple daily minor seizures that seem to

> disrupt her concentration and ability to react to her surroundings and that, to me, would certainly signify the potential for being off task 15 to 20 percent of an average workday. If you have somebody with those kinds of workplace interruptions and absences, will that be a work preclusive behavior pattern?

(Doc. #18-2, Tr. 76.) In response, the vocational expert stated that such an individual would not be able to complete an 8 hour, 40 hour workweek with 2 or more days off a month from work. (Id.) The ALJ then presented another scenario where the individual is limited to a full range of light work but because of seizures, kept away from:

> any ladder, rope, or scaffold climbing and kept from any exposure to dangerous moving machinery, unprotected heights, certainly no -- nothing like hi-lo driving or even commercial driving, and then psychologically, essentially kept at, you know, simple types of tasks, understanding, remembering and carrying out simple instructions, and also with only occasional interaction with the general public, coworkers, and supervisors in the, in the workplace. And finally, also kept at a job that only requires occasional work setting or work process adjustments.

(Id.) Based on these limitations, the vocational expert testified that there would be a representative number of jobs that would accommodate the limitations, but not the past relevant work. (Id., Tr. 77.) The ALJ asked if the jobs would remain feasible with 2-4 absences a month, or if off task 15 to 20 percent of the workday, and the vocational expert testified that they would not. (Id.)

The cited cases do not support plaintiff's position that the ALJ issued a decision unsupported by substantial evidence. In Estrada, the Court noted "Social Security Ruling 00-4p squarely addresses the situation where the VE's testimony conflicts with the DOT and how the ALJ should handle it. The ruling requires the ALJ to ask the VE whether any possible conflict exists between his testimony and the DOT, and if the testimony appears to conflict with the DOT to elicit a reasonable explanation for the apparent conflict." Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1302 (M.D. Fla. 2006). In this case, the ALJ specifically questioned the vocational expert if the opinions offered were consistent with the Dictionary of Occupational Titles, and the vocational expert answered yes. (Doc. #18-2, Tr. 77-78.) The ALJ specifically concluded that the testimony was consistent with the information contained in the DOT. (Id., Tr. 42.) No further explanation was required because there was no expressed conflict. Counsel had the opportunity to question the vocational expert, and failed to elicit any inconsistencies. The Eleventh Circuit has noted that "the VE's testimony 'trumps' the DOT." Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999); Leigh v. Comm'r of Soc. Sec., 496 F. App'x 973, 975 (11th Cir. 2012). The Court finds that the ALJ's finding was supported by substantial evidence. The objection is overruled.

**IV.**

The Magistrate Judge found that this case was distinguishable from a line of cases finding error for exclusive reliance on OES numbers because the vocational expert responded by testimony that he used the Florida Agency for Work Force Innovation for the job numbers, and OccuBrowse for the numbers by the specific individual DOT code. The Magistrate Judge found it was "speculative at best" that the vocational expert relied on numbers from an OES group rather than specific DOT titles.

The ALJ noted three representative occupations presented by the vocational expert: (1) sorting mail clerk, of which there are 5,300 jobs in Florida and 99,000 in the national economy; (2) garment sorter, of which there are 7,200 jobs in Florida and 217,000 in the national economy; and (3) remnant sorter, of which there are 13,000 jobs in Florida and 489,000 in the national economy. (Doc. #18-2, Tr. 42; Tr. 77.) Plaintiff argues that the job numbers from SkillTRAN, which created the software OccuBrowse, differ dramatically from those presented by the vocational expert, which appear to be the United States Department of Labor's numbers for broader Occupational Employment Statistics (OES) groups. They may appear to be so, but there is nothing in the record to support this position. The objection is overruled.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Objections (Doc. #28) are **overruled**.

2. The Report and Recommendation (Doc. #27) is **accepted and adopted** by the Court.

3. The Decision of the Commissioner of Social Security is **affirmed**.

4. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___17th___ day of August, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Carol Mirando
U.S. Magistrate Judge

Counsel of Record